## JAMES M. HARRISON v. THE COMMONWEALTH.

ERROR, ETC., TO THE COURT OF QUARTER SESSIONS OF ALLE-GHENY COUNTY.

Argued November 6, 1888—Decided January 7, 1889.

1. Where a defendant in a criminal proceeding has been convicted upon an indictment which is insufficient to support judgment, the court, instead of arresting judgment, may order a new trial upon a bill sufficiently charging the offence, to be laid before the grand jury by the district attorney.

2. A bill so sent to the grand jury by the district attorney, upon his official responsibility and by leave of court, may not be quashed because the offence charged therein does not conform to that set forth in the original information, or for other matters not appearing upon the face of the bill.

3. The act of April 11, 1866, P. L. 604, providing that any person in Allegheny and Schuylkill counties receiving or buying from minors etc., any scrap iron, brass, lead, copper, or other metal, shall be guilty of a misdemeanor, etc., seems to be within the police powers of the state, and, on the trial of a cause under its provisions, the jury have nothing to do with the propriety of the law or its constitutionality.

Before PAXSON, GREEN, CLARK, WILLIAMS and HAND, JJ.; GORDON, C. J., and STERRETT, J., absent.

Nos. 162, 163 October Term 1888, Sup. Ct.; court below, No. 244 June Term 1888, Q. S.

On June 7, 1888, an information was made before an alderman of Pittsburgh, charging James M. Harrison with having unlawfully, wilfully and knowingly received into his possession one lot of lightning rods, stolen from the Third Presbyterian Church, well knowing said lightning rods to have been stolen. The proceedings having been returned to the Court of Quarter Sessions, an indictment was found a true bill by the grand jury, the first count of which charged the defendant with having feloniously received two hundred pounds lightning rod, the goods, etc., of the board of trustees of the Third Presbyterian Church, lately before by some person to the jurors unknown stolen, etc., the defendant then and there well knowing the goods, etc., aforesaid to have been so stolen, etc. The second charged that the defendant received and bought from certain minors, naming them, "two hundred pounds lightning rod of the value of twenty-five cents per pound, contrary," etc.

On June 29, 1888, on motion of the district attorney, it was ordered that the second count of the indictment be amended as to the description of the property, so that it should read, copper lightning rod, instead of, lightning rod.[1]  On the same day, the defendant was put upon his trial, when the jury returned a verdict of not guilty upon the first count; guilty upon the second count.

On June 31, 1888, the defendant, by his attorneys, made a motion in arrest of judgment and assigned as reasons, in substance, that the second count of the indictment, as found, charged no indictable offence, and that the court erred in allowing the amendment of the count, whereby the defendant was subjected to trial for an alleged offence without presentment by the grand jury.[2]

On July 7th, the motion in arrest of judgment was overruled, but it was ordered that the verdict be set aside as to the second count of the indictment, that a new trial be granted upon said count, "and it is further ordered that the case be referred back to the grand jury, and that a bill be laid before them,

charging the defendant with purchasing copper, and scrap copper, from minors.[4]

Thereupon the district attorney framed a new bill of indictment with two counts, the first charging the defendant with having unlawfully received and bought from certain minors, naming them, two hundred pounds of copper, of the value, etc.; and the second charging a like offence as to. two hundred pounds .of scrap copper.

On July 18, 1888, this indictment having been returned a true bill, the defendant filed a motion to quash for the reasons following, to wit:

1 The record shows the setting aside of a former verdict, and the granting of a new trial by the court, of its own motion, and without the application and against the consent of the defendant.

2. Because the record in the former trial discloses that the defendant was convicted upon the second count of the indictment and recommended to the mercy of the court, and moved in arrest of judgment, which motion was by the court overruled and verdict set aside and 'a new trial granted upon the second count of the indictment, without an application warranting the same; the court instead of so doing, should have either overruled the motion or arrested the judgment.

3. That the indictment is not supported by the information, which simply charges the receiving of stolen goods, while the indictment charges the defendant with a distinct and separate offence, not set forth in the information.

4. That the information charges the defendant with receiving stolen goods, and the first count of the indictment on the former trial charges him specially with that offence and no other, and the record shows that the defendant was tried upon that count of the indictment and acquitted, which is an end to the prosecution.

5. That the record discloses the fact that it was attempted to join with a count for felony, to wit: receiving stolen goods, a count charging the defendant with a totally distinct and repugnant offence, to wit: an alleged statutory offence, having no elements in common with the alleged felony; that the count for the alleged statutory offence being fatally defective, the court permitted an amendment thereof, which amendment

was coram non judice and void; that a conviction was had on the said count as amended; that the court overruled a motion in arrest of judgment upon said count and of its own motion granted a new trial thereon ; the commonwealth thereby harassing the defendant, and compelling him to answer a second time at great expense and double costs, all of which is beyond the power and jurisdiction of the court.

6. That the record as it now stands, discloses an attempt on the part of the commonwealth, to join in the same indictment a count for felony, with a count for misdemeanor, charging a totally distinct and repugnant offence.

7. That after an acquittal of a felony, charged in an indictment, wherein a count for a wholly distinct and repugnant offence is joined, there is no jurisdiction in the court to set aside the first verdict, and subject the defendant to a second trial for the alleged misdemeanor in the same proceeding.

8. That the indictment charges no offence against the law of the land.

The same day the foregoing motion was overruled,[5] and the defendant, being called upon to plead and standing mute, the court directed the plea of not guilty to be entered for him.

The cause then proceeding to trial, the evidence was submitted, when the court, SLAGLE, J., charged the jury orally and answered the points presented on behalf of the defendant, inter alia, as follows, to wit:

7. That the jury are judges of the law in this case, and if they are of opinion that the law under which the commonwealth claims to convict is unreasonable, absurd and a plain violation of common right secured by the constitution of the United States and of the law of Pennsylvania, the jury should acquit.

Answer: Refused.[9]

10. That the information in this case does not in any manner charge the offence for which the defendant is now on trial, and the information not supporting the indictment, there can be no conviction, and the verdict must be not guilty.

Answer: Refused.[10]

The jury returned a verdict that the defendant was guilty, etc.

On July 23, 1888, the defendant filed a motion in arrest of judgment based upon reasons assigned which were substantially the same with those assigned for the last mentioned motion to quash. . This motion was refused,[12] and the same day the defendant was sentenced to pay a fine of $300 and the costs of prosecution. Thereupon, upon the allowance thereof by Mr. Justice CLARK, the defendant purchased writs of error and certiorari, and specified that the court erred, inter alia:

1. In making the order of June 29, 1888, directing the amendment of the second count of the first indictment.[1]

2. In overruling the defendant's motion of June 31, 1888, in arrest of judgment.[2]

4. In making the order of July 7, 1888, directing a new trial and that a new bill be laid before the grand jury.[4]

5. In refusing defendant's motion to quash the second indictment.[5]

9, 10. In refusing the defendant's points.[9] [10]

12. In refusing the final motion in arrest of judgment.[12]

Mr. R. H. Johnston (with him Mr. C. C. Dickey), for the plaintiff in error:

1. The act of April 11, 1866, P. L. 604, prohibiting the receiving or buying from minors, etc., scrap iron, brass, lead, copper, or other metal, as a misdemeanor, is in derogation of the common law, is highly penal, is restricted to two counties of the state, and if valid at all which we deny, must be strictly construed in favor of the accused: Central R. Co. v. Green, 86 Pa. 427; East Union Tp. v. Ryan, 86 Pa. 459; Aechternacht v. Watmough, 8 W. & S. 162; Pool v. Neel, 2 Sid. 63. In all cases under penal statutes, where there is a question of doubt, the party of whom the penalty is claimed is entitled to the benefit of the doubt: Chase v. Railroad Co., 26 N. Y. 523; Strong v. Stebbins, 5 Cow. 211; Palmer v. Conley, 4 Den. 375; Maskill v. State, 8 Blackf. 299. The second count of the first indictment, as found, did not charge the buying or receiving of any metal whatever, and after the amendment it did not charge the buying or receiving of scrap iron, copper, brass, lead, or other metal.

2. An indictment could not be amended at common law, nor was it within any of the old statutes of amendment:

Archb. Cr. Pr. & Pl., 313. The Pennsylvania statute has modified the common law so as to allow amendments as to matters of form, but not of substance. If the defects in the count were matters of form, they were cured by the verdict, and if matters of substance, they could not be amended after verdict; the count was void. And, while the court may use discretion in quashing indictments on motion, after verdict they are obliged to arrest the judgment when the matter charged is not indictable: Rex v. Wheatly, 2 Burr. 1125; Archb. Cr. Pr. & Pl., Pomeroy's ed., 321.

3. Whatever may be the opinion as to whether or not the indictment, as it originally stood or as it was amended, was within the terms of the act of 1866, if the act is unconstitutional, the indictment must fall and the judgment should have been arrested. The act is in plain violation of § 2, article 4, constitution of the United States, as well of the XIV. amendment thereof. A state law imposing a higher license tax upon non-residents for selling goods by sample than upon resident dealers, is unconstitutional: Ex parte Watson, 15 Fed. R. 511; Ward v. Maryland, 12 Wal. 418. Under the bill of rights of the Pennsylvania constitution, this court held that the legislature has no power to make any law preventing persons who are sui juris from making their own contracts: Godcharles v. Wigeman, 113 Pa. 431. It is urged that the act is within the police power of the state to prevent thefts of metal by minors and unknown persons, but we submit that because a harmless and ordinary article of trade is sometimes bought and sold dishonestly, is no reason why the honest sale of it should be prohibited as a misdemeanor.

*Mr. W. D. Porter, District Attorney,* for the defendant in error:

1. Even if the court had arrested the judgment upon the first conviction, the defendant would have been liable to prosecution for the offence of buying scrap copper from minors, for, as is admitted, he had never been tried upon an indictment containing a count upon which a legal conviction of that offence could have been sustained. To sustain the plea of autrefois acquit, or autrefois convict, it must appear that the evidence necessary to support the second indictment would

have been sufficient to procure a legal conviction, a good judgment, upon the first: Commonwealth v. Zepp, 3 Clark 311; Commonwealth v. Trimmer, 84 Pa. 68; Heikes v. Commonwealth, 26 Pa. 513. If, therefore, the court had arrested the judgment upon the first indictment, the defendant could not successfully have pleaded that record as a bar to the second indictment: Commonwealth v. Newcomer, 49 Pa. 478.

2. The submission to the grand jury of a new bill, by leave of court, charging the offence in the language of the statute, was within the right of the district attorney, without a previous hearing or binding over, as has been repeatedly recognized: McCullough v. Commonwealth, 67 Pa. 30; Brown v. Commonwealth, 76 Pa. 319. Where an indictment has been regularly submitted by the district attorney, under the sanction of the court, it cannot be quashed, except for matters appearing upon its face: McCullough v. Commonwealth, 67 Pa. 30. Nor is it necessary that the original information support the indictment, when it is preferred by direction of the court, as is shown by the cases cited: see also Rowand v. Commonwealth, 82 Pa. 406. Moreover, since the case of Henwood v. Commonwealth, 52 Pa. 425, the propriety of joining a count for felony with a count charging a misdemeanor, has never been doubted.

3. The act of 1866 does not discriminate against citizens of other states; it is a regulation of commerce within the state and is equally binding upon all who undertake to deal in a particular article. That this does not conflict with the constitution of the United States, nor any of its amendments, is settled beyond question in Powell v. Commonwealth, 114 Pa. 265, and in Walker v. Commonwealth, 2 Pa. S. C. Dig. 308, the oleomargarine cases, the latter decided in 1887. Moreover, a law cannot be declared unconstitutional, merely because it impairs any of those rights which it is the object of a free government to protect, or because it is wrong or unjust: Penn. R. Co. v. Riblet, 66 Pa. 164; Sharpless v. Philadelphia, 21 Pa. 147; and the legislature has full power to enact laws for the regulation of any traffic or business so as to subserve public health and morals and protect property, and by virtue of this authority many laws are now in force which regulate sundry occupations.

OPINION, MR. JUSTICE PAXSON:

It would have been better had the learned judge below arrested the judgment on the second count of the first indictment. The jury acquitted the defendant on the first count, and as the second count did not charge an indictable offence, no judgment could have been entered thereon. Instead of arresting the judgment the court granted a new trial, and a new indictment having been found by the grand jury, charging defendant with buying scrap copper from minors, he was convicted.

We do not see, however, how the action of the court in not arresting the judgment has prejudiced the defendant. A new trial was granted and no further proceedings were had upon the first indictment, nor could there have been under the circumstances. The action of the court has not left the defendant exposed to costs or any other peril. The second trial was upon what was practically a new indictment. It charged a different offence, although it referred to the same transaction intended to be charged in the first. In other words, the charge was set out in conformity to the act of assembly. It consisted in buying scrap copper from minors, in violation of the act of April 11, 1866, which provides that " Any person in Allegheny or Schuylkill counties receiving or buying from minors, or unknown or irresponsible parties, any scrap iron, brass, lead, copper, or other metal, shall be guilty of a misdemeanor," etc.

It was urged that this charge did not conform to the information, which was for receiving stolen goods. This is true, but the indictment was what is sometimes called a district attorney's bill; that is, a bill sent to the grand jury by that officer, upon his official responsibility and by leave of court. A bill so sent cannot be quashed unless for matters appearing upon its face: McCullough v. Commonwealth, 67 Pa. 30. There was no plea of twice in jeopardy. Nor would it have availed if there had been. There could have been no conviction upon the first bill, of the offence charged in the second.

The question of the constitutionality of the act of 1866 is not directly raised by any assignment of error and does not require discussion. I will say, however, that the act appears to be an exercise of the police powers of the state, and is as much intended to prevent children from becoming thieves, as

to protect the particular kind of property referred to in the act. It is in the same line with other legislation in regard to minors, by which it is made an offence to employ children in mines and factories; to sell them liquor; forbidding the employment of children under eighteen years of age in singing, playing on musical instruments, or begging on the streets; prohibiting the sale of deadly weapons and explosives to persons under sixteen years of age, etc., etc. The jury had nothing to do with the propriety of the law or its constitutionality, and the learned judge committed no error in declining to allow them to pass upon these questions. While this is far from being a clear record, we are unable to say that any substantial error has been committed or that injustice has been done the defendant.

Judgment affirmed.